**NEW ENGLAND DUPLICATING CO., Inc. v. MENDES.**

No. 4570.

United States Court of Appeals
First Circuit.

July 16, 1951.

Ezekiel Wolf, Boston, Mass., for appellant.

Herbert A. Baker, Boston, Mass. (Daniel J. Daley, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action for infringement of a federally registered trade-mark, and for unfair competition. Federal jurisdiction is clear from the established evidentiary facts concerning which there is little if any dispute.

J. Curry Mendes, the plaintiff herein, in 1939 devised a so called collating and tipping machine, otherwise known as an interleaving machine, for placing spot gum on paper and carbon paper for the production of one-time carbon forms. He called his machine a "Paddy" machine, that name being adapted from the nickname of one of his daughters, and so advertised it in a leading trade periodical. At the outset he did business as an individual under the name Paddy Machine Company, and filed that name as provided by Massachusetts law in the office of the City Clerk of the City of Boston where he carried on his business. In 1940, he organized a local corporation, of which he was president, treasurer and manager, called Paddy Machine Company, Inc., to take over the assets of Paddy Machine Company, and by the end of 1942 the corporation had sold and shipped two machines bearing the label "Paddy" in interstate and foreign commerce, one going to Cincinnati, Ohio, and the other to Canada. Material shortages and financial difficulties beset Paddy Machine Company, Inc., during 1942, and in March of that year, in order to raise funds, John Curry Mendes on behalf of the corporation executed a mortgage covering all its furniture, good will, accounts receivable and orders for merchandise to one Frank L. Harney. Soon after this the plaintiff withdrew from the corporation, and thereafter it carried on business without him under the control of the mortgagee and one Herbits, who testified that he actually ran the business.

A patent on the so called "Paddy" machine issued in 1945, but Paddy Machine Company, Inc., was forced by necessity to discontinue business as a corporate entity at about the same time. Herbits, however, received and answered numerous inquiries about "Paddy" machines addressed to the corporation from 1945 until October, 1948, when the defendant corporation, New England Duplicating Co., Inc., claiming under an. oral agreement with Herbits, (which was reduced to writing in June, 1949), undertook by advertising and by circulars addressed to the trade, to promote the sale of collating and tipping machines under the "Paddy" name.

The plaintiff in the meantime, beginning in 1947, had recommenced the manufacture and sale of collating and tipping machines. With one exception, however, the machines were labeled as either "Mendes" or "JCM". The court below found, however, that the plaintiff still used the name "Paddy" in his correspondence, that he had not abandoned it and that he intended to use it again on an improved machine which he expected to produce, in the meantime using "Mendes" and "JCM" as broader terms to designate all his products.

In this posture of affairs, the plaintiff, acting on the advice of counsel, made two shipments of collating machines bearing the "Paddy" mark from Boston to New York for the purpose of securing the exclusive use of the mark. He made the first of these shipments on May 31, 1949 to his sales office in New York. A month later, on June 29, he filed application for registration of his mark asserting his belief in his ownership thereof and citing the above shipment as his first use of the mark in commerce, and then on July 14, 1949, he

shipped his second machine bearing the "Paddy" mark to a purchaser in New York. On February 21, 1950, Registration No. 521,322 issued to him for the mark as applied to machines of the kind under consideration.

Shortly thereafter the plaintiff learned that the defendant was using the same name in its advertising of like machines in trade periodicals, and he thereupon removed the "Paddy" mark from the two machines he had shipped to New York, and stopped applying the mark to any others, until, to quote from the findings of the District Court, "such time as it could be demonstrated by legal decision that he was the owner of this mark, and that his registration was in fact good." [94 F. Supp. 558, 560.]

On the foregoing facts there appear to be weak links in the defendant's asserted chain to title to the mark. But this is not an important factor for we agree with the court below that the plaintiff by priority of appropriation, use and employment has established his ownership of the mark as against the defendant, whatever the latter's chain of title may be.

Section 1 of the Lanham Act so called, 60 Stat. 427; 15 U.S.C. § 1051, provides that "The owner of a trade-mark used in commerce may register his trade-mark under this Act" and registration under the Act gives rise to rights of exclusive use cognizable in the federal courts. § 32 id.; 15 U.S.C. § 1114.

There can be no doubt whatever, and it is not disputed, that the mark is registrable under § 2 of the Act for the goods to which the plaintiff applied it. Nor can there be any serious question that the plaintiff used it "in commerce" on those goods before he applied for registration. The shipment of a labeled machine to his sales office in New York on May 31, 1949, cited in his application for registration as his first use of the mark in commerce, clearly constituted a use of the mark in commerce under § 45, par. 15, of the Act wherein it is provided in pertinent part: "For the

purposes of this Act a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce." The use of the disjunctive "or" between "sold" and "transported" leaves no doubt that a transportation in the "commerce" defined in par. 3 of § 45 id.* is enough to constitute a "use" even without a sale.

The question remains whether the plaintiff has established that he was the "owner" of the mark, for under § 1, supra, only the "owner" of a mark is entitled to have it registered. In short, ownership is a condition precedent to registration, Macaulay v. Malt-Diastase Co., 1925, 55 App.D.C. 277, 4 F.2d 944, 945, although it may not be to an application for registration,—an apparently novel question argued at the bar by reason of the plaintiff's sale and shipment to the purchaser in New York on July 14, 1949, but one which we do not need to decide in the view we take of the case.

It has long been the rule "That the exclusive right to the use of the mark or device claimed as a trade-mark is founded on priority of appropriation; that is to say, the claimaint of the trade-mark must have been the first to use or employ the same on like articles of production." Columbia Mill Co. v. Alcorn, 1893, 150 U.S. 460, 463, 464, 14 S.Ct. 151, 152, 37 L.Ed. 1144, and cases cited. See also United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 100, 39 S.Ct. 48, 63 L.Ed. 141. This does not mean that a secret, private, or undisclosed use of a mark constitutes an appropriation of it for, as said in the Rectanus case, supra, at page 97, of 248 U.S., at page 50 of 39 S.Ct., 63 L.Ed. 141, "the right to a particular mark grows out of its use, not its mere adoption." But to constitute a use or employment adequate for an appropriation, it is not in our opinion essential, under the current Act at least, that there be an actual "sale" of goods with the mark

* "The word 'Commerce' means all commerce which may lawfully be regulated by Congress."

affixed thereto as the defendant-appellant contends.

 No doubt sales of goods with the mark affixed thereon or thereto constitute a use or employment of the mark sufficient to establish ownership. And doubtless evidence of such sales will in the vast majority of cases constitute the basic, if not the sole, evidence relied upon to show a use adequate to establish appropriation and hence ownership. But to hold that a sale or sales are the *sine qua non* of a use sufficient to amount to an appropriation would be to read an unwarranted limitation into the statute, for so construed registration would have to be denied to any manufacturer who adopted a mark to distinguish or identify his product, and perhaps applied it thereon for years, if he should in practice lease his goods rather than sell them, as many manufacturers of machinery do. It seems to us that although evidence of sales is highly persuasive, the question of use adequate to establish appropriation remains one to be decided on the facts of each case, and that evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership, even without evidence of actual sales.

 On this view the evidentiary facts found by the court below clearly warrant the court's conclusion that the plaintiff was the owner of the mark by prior appropriation and use, for the plaintiff adopted the mark for his machine when he first devised it, and he then promptly used the mark in publicizing his product in a leading trade periodical. Moreover by 1943 the corporation of which he at the time was the key figure had sold two machines with the "Paddy" mark affixed thereto. All this we think was clearly enough to establish the plaintiff's ownership of the mark.

And we think it is not a required conclusion from the established facts that the plaintiff had abandoned his mark.

Par. 16 of § 45 of the Lanham Act so far as material provides:

"A mark shall be deemed to be 'abandoned'—(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment."

 It is true that between 1939 and 1947 the plaintiff did not use the mark for substantially more than two consecutive years. But this created only prima facie abandonment, and the court below said categorically: "I find that there was no abandonment by the plaintiff Mendes from the first day that he used the name "Paddy" in 1939. He did suspend the use of it, but only until the real owner of the mark could be determined and not with the intent to abandon it. This was not an abandonment which would place the mark in the public domain." The circumstances under which business had to be carried on from 1939 to 1947 were certainly peculiar, and we cannot by any means say that those circumstances do not warrant the conclusion of the court below that although the plaintiff discontinued use of the mark for more than two consecutive years, he did so intending to resume its use as soon as circumstances permitted. In brief the conclusion reached by the court below is amply warranted by the evidence in the record.

The judgment of the District Court is affirmed.