326 F.2d 87
 139 U.S.P.Q. 465
 DROP DEAD CO., Inc., a corporation doing business as
Paramount Chemical Co., and Paramount Sales Co., Western
Filling Corp., a corporation, Frank G. Marshall, Hugh G.
Marshall and James G. Christenson, Appellants,
v.
S. C. JOHNSON & SON, INC., a corporation, Appellee.
 No. 18414.
 United States Court of Appeals Ninth Circuit.
 Dec. 3, 1963.
 
 William C. Babcock and G. Merle Bergman, Long Beach, Cal., for appellants.
 Woodson, Pattishall & Garner, Beverly W. Pattishall, and Robert M. Newbury, Chicago, Ill., Fulwider, Patton, Rieber, Lee & Utecht, and Warren L. Patton, Los Angeles, Cal., for appellee.
 Before BARNES and JERTBERG, Circuit Judges, and JAMESON, District judge.
 BARNES, Circuit Judge.
 
 
 1
 Plaintiff-appellee brought suit against defendants-appellants for unfair competition and for infringement of a copyright and a trademark. The district court granted a permanent injunction on all three grounds and retained the issue of damages to be determined by a master after the interlocutory judgment became final. (210 F.Supp. 816) Appellants appeal from that interlocutory judgment. This court has jurisdiction of the appeal pursuant to 28 U.S.C. 1292(a)(1). The jurisdiction of the district court is an issue in this appeal and will be discussed later.
 
 
 2
 Plaintiff-appellee is a Wisconsin corporation producing primarily what is commonly known as 'Johnson's Wax,' and manufacturing a variety of household products, one of which is an aerosol furniture wax named PLEDGE. Plaintiff registered its PLEDGE trademark (Reg. No. 668,526) and secured a copyright certificate for its PLEDGE label. Plaintiff began using the PLEDGE trademark on January 31, 1958, and the PLEDGE label on March 15, 1958.
 
 
 3
 Appellant Drop Dead Co., Inc., is a California corporation. One of the household products which it manufactures is an aerosol furniture wax called PROMISE. The three individual defendants-appellants are the officers and sole owners of appellant Drop Dead Co. Appellant Western Filling Corp. is a California corporation which fills and labels the PROMISE aerosol containers. Appellants first used the trademark PROMISE and a label similar to appellee's PLEDGE label on aerosol cans on about July 20, 1959. The similarity of the labels is readily seen in the Exhibits G and T-10, and the picture opposite page 3 of appellee's brief. After commencement of the action in the district court appellants modified their label to that shown as Exhibit H, but continued to use the PROMISE trademark.
 
 
 4
 Since first adopting its trademark PLEDGE, appellee has sold over $50,000,000 of its product, and has spent over $12,000,000 advertising it. Such sales and advertising have been nationwide. Since adopting its PROMISE trademark, appellants have sold about $7,000 of the product, all sales being in southern California. One can of PROMISE with label attached was sent to New York in order to register the trademark PROMISE.
 
 
 5
 Certain findings of the trial court are significant, and unattacked on this appeal. They are:
 
 
 6
 '24. Defendants' Promise product, as originally sold, was marketed in a label closely simulating plaintiff's Pledge label as to color, layout, design and wording.'
 
 
 7
 '25. Defendants' original Promise label was copied from and is a slavish copy of plaintiff's Pledge label. The palpable copying of the wording on the label discloses the intention of defendants to appropriate plaintiff's Pledge label.'
 
 
 8
 '27. Subsequent to the filing of this action, defendants modified their Promise label to eliminate the slavish copying of color and design from plaintiff's Pledge label, but defendants' modified label continued to use the trademark Promise.'
 
 
 9
 Likewise, in its memorandum opinion the trial court stated:
 
 
 10
 'At the time this action was instituted the imitation of the label by the defendant was so slavish that even the color scheme and the contrast between the letters on the cans and labels were imitated. Later the color scheme of the defendants' label was changed but the word 'Promise' remained and the label also continued to use descriptive material which was palpably copied from the plaintiff's label and descriptive matter on it.'
 
 
 11
 In neither their 'Statement of Points on Which Appellants Intend to Rely' nor in their briefs nor in oral arguments do defendants question the district court's findings of fact:
 
 
 12
 (1) that defendants deliberately copied plaintiff's PLEDGE label (R.62);
 
 
 13
 (2) that defendants adopted and used the trademark PROMISE for the purpose of trading upon the good will built up in plaintiff's PLEDGE trademark (R.63);
 
 
 14
 (3) that the confusion which existed among purchasers was caused (and was likely to be caused) by defendants' use of the trademark PROMISE, and of the original label for PROMISE (R.63-64).
 
 
 15
 Remedies for the copying of a copyrighted work are created by the Copyright Act, 17 U.S.C.A. 101 (Mazer v. Stein (1954) 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630), and the use of a trademark or label likely to cause confusion of source is prohibited by the law of trademark infringement (15 U.S.C. 1114(1)) and the law of unfair competition (Audio Fidelity, Inc. v. High Fidelity Recordings, Inc., 9 Cir. 1960, 283 F.2d 551, 555). Since the findings of deliberate copying and likelihood of confusion are unchallenged on this appeal, unless defendants show that plaintiff's copyright is invalid or that the district court was without jurisdiction, or unless the defendants convince this court on their allegations raised in issues (4), (5) or (6) below, the judgment of the district court issuing the injunction should be affirmed.
 
 
 16
 The issues are framed thus by appellee: (Br.5)
 
 
 17
 (1) Is the plaintiff's copyright of its PLEDGE label valid?
 
 
 18
 (2) Did the district court have jurisdiction of plaintiff's claim of trademark infringement?
 
 
 19
 (3) Did the district court have jurisdiction of plaintiff's claim of unfair competition?
 
 
 20
 (4) Did the district court err in receiving and considering evidence of defendants' use of the trademark PROMISE on the modified label?
 
 
 21
 (5) Is the plaintiff barred from relief in this action by alleged violations of the anti-trust laws?(6) Does this court have jurisdiction on this appeal to modify the discretionary monetary awards of the district court (and if so, did the district court abuse its discretion)?
 
 We discuss each in turn:
 
 22
 * Is plaintiff's copyright of its PLEDGE label valid?
 
 
 23
 Defendants obviously copied the laudatory and instructional words of the PLEDGE label as well as the design.
 
 
 24
 The first issue concerning the validity of the copyright is whether appellants can raise that issue at this time.
 
 
 25
 Appellants admitted during the trial that the copyright and the trademark were valid.[1] Appellee points out that if an issue is conceded below it cannot be raised on appeal. Wilson v. Byron Jackson Co., 9 Cir. 1937, 93 F.2d 572, 573n2; Aetna Life Ins. Co. v. Carrillo, 5 Cir. 1947,164 F.2d 883, 884; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir. 1942,127 F.2d 799, 804; and Edward B. Marks Music Corp. v. Continental Records Co., 2 Cir. 1955, 222 F.2d 488, 492, cert. den. 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764. There the Second Circuit said:
 
 
 26
 'But a plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings, resurrect the abandoned issue.'
 
 Appellants reply that:
 
 27
 'The admission * * * can have no effect on appellants' right to raise a question of constitutional validity here. Constitutional jurisdictional facts cannot be waived by the parties. Matter which, for constitutional definition is not copyrightable, is outside the authority of Congress and the courts, and is always a matter in issue.' (Reply Br.1)
 
 
 28
 We will assume for the purpose of this discussion that whether waived below or not, appellants' objection upon jurisdictional grounds can be raised here; and if sound, appellants can, at the least, demand a new trial.
 
 
 29
 The copyright material was not copyrightable, say appellants, because the language used on the label was textual and 'used solely to laud the product and instruct in its use.' Appellants maintain: (a) that the copyright office is a mere depository, (b) that there is no discretion in the copyright office, as there is in the patent office, as to what is copyrightable and what is not, (c) that the Copyright Act itself gives little guidance, (d) that the case law gives little aid because of 'loose language,'[2] (e) that the courts should strictly follow what admittedly is dicta in Higgins v. Keuffel, 140 U.S. 428, 11 S.Ct. 731, 35 L.Ed. 470 (1891); (f) that the courts have uniformly been wrong in referring to Mr. Justice Holmes' opinion in Bleistein v. Donaldson Lith. Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903) as establishing a 'new and liberal standard.'[3] All this, say appellants, is not enough.
 
 
 30
 Yet, in Rosenthal v. Stein, 9 Cir. 1953, 205 F.2d 633, this court stated:
 
 
 31
 'An opinion on copyright would be unusual indeed that did not mention the case entitled Bleistein v. Donaldson Lithographing Company, 1903, 188 U.S. 239, 23 S.Ct. 298, 300, 47 L.Ed. 460. This is the celebrated circus poster case in which Justice Holmes discoursed upon art and copyrights. Plaintiff sued defendant to recover the penalties prescribed for infringement. The objects copyrighted were chromolithographs which, as circus posters, were especially adapted to advertise 'Wallace' shows. After Wallace had 'given them up' they were 'used by less pretentious exhibitions * * *.' The trial court found for the defendant. It has been suggested that the posters could not be the subjects of legal copyright because they were not art and because they were used commercially. The court said, 188 U.S. at page 251, 23 S.Ct. at page 300, 'Again, the act, however construed, does not mean that ordinary posters are not good enough to be considered within its scope. The antithesis to 'illustrations or works connected with the fine arts' is not works of little merit or of humble degree, * * * it is 'prints or labels designed to be used for any other articles of manufacture.' Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd, and therefore gives them a real use,-- if use means to increase trade and to help to make money." (205 F.2d at pp. 635-636)
 
 
 32
 In Doran v. Sunset House Distributing Corp., 197 F.Supp. 940 (S.D.Cal.1961), affirmed 304 F.2d 251, the district court stated:
 
 
 33
 'To be copyrightable, a work must be 'original' in that the author has created it by his own skill, labor and judgment. Dorsey v. Old Surety Life Ins. Co., 10 Cir., 1938, 98 F.2d 872, 119 A.L.R. 1250; Smith v. George E. Muehlebach Brewing Co., D.C.W.D.Mo.1956, 140 F.Supp. 729. As stated in Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir. 1951, 191 F.2d 99, 102.
 
 
 34
 "* * * 'Original' in reference to a copyrighted work means that the particular work 'owes its origin' to the 'author.' No large measure of novelty is necessary. * * *
 
 
 35
 "* * * All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460.'
 
 
 36
 'Thus, it appears that the requirements for the 'originality' necessary to support a copyright are modest. The author must have created the work by his own skill, labor and judgment, contributing something 'recognizably his own' to prior treatments of the same subject. However, neither great novelty nor superior artistic quality is required.'
 
 
 37
 The trial court here heard of the effort and cost[4] that went into the design that was finally adopted by appellee. There was prima facie evidence of originality before the court, created by the issuance of the copyright. Wihtol v. Wells, 7 Cir. 1956, 231 F.2d 550, 553; H. M. Kolbe Co. v. Armgus Textile Co., 184 F.Supp. 423, 424 (S.D.N.Y.1960) aff. per curiam, 2 Cir. 1960, 279 F.2d 555.
 
 
 38
 In Universal Pictures Co. v. Harold Lloyd Corp., 9 Cir. 1947, 162 F.2d 354, this court said (in reply to an argument that the arrangement of that which was copyrighted was commonplace):
 
 
 39
 'Originality was displayed in taking commonplace materials and acts and making them into a new combination and novel arrangement which is protectible by copyright.'
 
 
 40
 Appellee adroitly sidesteps the fundamental issue raised by appellants' first point by stating 'Plaintiff * * * does not claim a separate copyright in the instructions and phrases,' nor 'the exclusive right to the use of ovals or gold foil as such'-- but only demands 'protection against copying of the total embodiment of the numerous elements of its entire original label.' (Br.17)
 
 
 41
 Plaintiff asserts it has shown the intent of defendants-appellants to copy its label; has demonstrated beyond doubt the original creation at some considerable expense of a label particularly and peculiarly embodying the numerous commonplace elements contained in it; that the worth and success of such combination 'is sufficiently shown by the (appellants') desire to reproduce them without regard to the plaintiff's rights,' quoting from Bleistein v. Donaldson, supra, 188 U.S. p. 252, 23 S.Ct. p. 300 and that the Copyright Act itself, 17 U.S.C. 5, contemplates as copyrightable 'prints and pictorial illustrations, including prints or labels used for an article or merchandise.'
 
 
 42
 We agree. While, in view of the trial court findings that plaintiff's rights were violated under the copyright, trademark and unfair competition laws, any one cause of action found valid would justify affirming the judgment rendered below, we conclude the 'liberal' rather than the 'strict' rule of what constitutes copyrightable matter has been followed in the Ninth Circuit, and this case seems to us clearly one where the same result should follow.
 
 
 43
 We hold with the trial court the plaintiff's copyright of its PLEDGE label was and is valid. We agree with the reliance in Fargo Mercantile Co. v. Brechet & Richter Co., 8 Cir. 1924, 295 F. 823, on the proposition that labels which go beyond a mere trademark are copyrightable; if a label has 'some value' as a composition, it no longer is 'a mere label.' (Higgins v. Keuffel,supra, 140 U.S. at p. 431, 11 S.Ct. at p. 732.)
 
 II
 
 44
 Did the district court have jurisdiction of plaintiff's claim of trademark infringement?
 
 
 45
 There are three independent grounds upon which the district court might have had jurisdiction.
 
 
 46
 The first ground on which to base jurisdiction over the trademark infringement claim is that the name PROMISE was used in commerce. Section 1338(a) of Title 28 provides:
 
 
 47
 'The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks.'
 
 
 48
 Section 1114(1) of Title 15 provides that any person who, without consent of the registrant, 'use(s) in commerce' any copy, colorable imitation, etc. of a registered mark on labels, etc. 'which such use is likely to cause confusion,' etc., shall be liable in a civil action by the registrant.
 
 Section 1127 of Title 15 provides:
 
 49
 'For the purposes of this chapter a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce * * *.'
 
 
 50
 Appellants sent one can of PROMISE, with the label appropriately attached, from Los Angeles to New York. It was thus 'transported in commerce' and thus the district court had jurisdiction of the trademark infringement claim. Miles Laboratories, Inc. v. Frolich, 195 F.Supp. 256 (S.D.Cal.1961), affirmed per curiam, 9 Cir. 1961, 296 F.2d 740; New England Duplicating Co. v. Mendes, 1 Cir. 1951, 190 F.2d 415.
 
 
 51
 Appellants attempt (Op.Br.46ff) to avoid this conclusion by the contention that the sending of the item for such use was not an actual use but only a colorable use, in that it was only transported to obtain the trademark. Appellants try to show that it is 'plainly apparent from the context (of the trademark statutes)' (15 U.S.C. 1127) that colorable use was to be distinguished from actual use. However, we think that the statute makes no such distinction. Its language is clear. If the label is affixed and the goods transported in commerce, the mark is 'used in commerce.' The facts of In re Mueller, 132 U.S.P.Q. 688, differentiate it from this case, and the language therein relied upon by appellants is admittedly purely dicta.
 
 
 52
 Even if the district court did not have jurisdiction of the trademark infringement claim on the first ground, the second ground-- that the activity of appellants substantially affected interstate commerce-- is sufficient.
 
 
 53
 All one need show for a district court to have jurisdiction of such a claim is that the infringing mark has been used in commerce which Congress can regulate. 15 U.S.C. 1114, 1127; Stauffer v. Exley, 9 Cir. 1950, 184 F.2d 962. The question then is whether Congress can regulate appellants' activity with PROMISE in Southern California. The Congress can regulate such activity, even though it is wholly intrastate, if it is 'sufficiently substantial and adverse to Congress' paramount policy declared in the Act * * *.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co. (1948) 334 U.S. 219, 234, 68 S.Ct. 996, 92 L.Ed. 1328. We are satisfied that the district court had jurisdiction of the trademark infringement claim under both the first and second grounds. Seven thousand dollars of sales in Southern California can substantially affect appellee's sales, at least by $7,000 (if not more because of a possible resulting loss of goodwill, especially where there is direct copying and direct competition). But, standing alone, is not $7,000 'substantial'?
 
 
 54
 Fairway Foods v. Fairway Markets, 9 Cir. 1955, 227 F.2d 193, which appellants cite in opposition to this point, is not factually or legally similar.
 
 
 55
 The third possible ground of jurisdiction of the district court on this trademark infringement claim is that of diversity of citizenship. We are satisfied that the parties are of diverse citizenship. The fact was admitted by the parties and set forth in the pretrial order (R.28). And see Del Monte Special Food Co. v. California Packing Corporation, 9 Cir. 1929, 34 F.2d 774, 776; Ross-Whitney Corp. v. Smith Kline and French Laboratories, 9 Cir. 1953, 207 F.2d 190.
 
 III
 
 56
 Did the district court have jurisdiction of plaintiff's claim of unfair competition?
 
 
 57
 There is no allegation that the district court was in error in finding that appellants had unfairly competed with appellee. The only question concerning unfair competition is whether the district court had jurisdiction to hear the unfair competition claim on its merits. We rely on Armstrong Paint & Varnish Co. v. Nu-Enamel Corp. (1938) 305 U.S. 315, 324-325, 59 S.Ct. 191, reh. den. 305 U.S. 675, 59 S.Ct. 356, 83 L.Ed. 437.[5] Jurisdiction existed.
 
 IV
 
 58
 Did the district court err in receiving and considering evidence of defendants' use of the trademark PROMISE on the modified label?
 
 
 59
 Appellants argue that the complaint does not allege anything concerning the modified label which appellants adopted after the trial commenced. Of course, it could not because the modified label was not put into use until after the complaint was filed. Appellants thus argue that they were 'not advised by the pleadings to prepare a defense concerning the modified label.' (Op.Br.68) They point out that the district court considered the modified label in at least five of its findings of fact (27, 28, 29, 31, 34). They conclude that since it is impossible to determine at what point the court decided that there were infringements and unfair competition, the decision should be reversed and the case tried before a new judge. (Op.Br.67-69)
 
 
 60
 Appellee counters with the facts that defendants themselves offered evidence concerning the modified label (R.228,-232-234), and that the plaintiff offered evidence on the modified label without objection by appellants. Appellee cites cases for the proposition that evidentiary matters cannot be raised for the first time on appeal, and points out that the complaint pleads (R.14) the defendants' use of the trademark PROMISE and prays for an injunction against the use of
 
 
 61
 'the trademark Promise or the Promise label as used by defendants, or any colorable imitation thereof, in connection with the sale or offering for sale of wax or polishing products, or any similar or related products.' ucts.' (R.16)
 
 
 62
 Appellee also shows that the pretrial order, which supplemented the pleadings, included the issue of the use of the modified label as still confusing the public. (R.35,41)
 
 
 63
 Appellants attempt to avoid these arguments of appellee by pointing out that the supplement to the pretrial order reserved the issue of whether the complaint stated a cause of action as to the modified label. (R.43)
 
 
 64
 The issue was made clear in the pretrial order, if not the complaint. We hold the district court was not in error in assuming that it was adequately alleged.
 
 
 65
 Secondly, even if the district court would not have been justified in so assuming, we hold that appellants are barred from raising the issue on appeal when they did not object to it below, and indeed offered their own evidence on the issue. There was adequate reason for the district court to assume that the parties considered that the use of the modified label was in issue. Appellants established beyond doubt they had notice of the issue, and adequate notice.
 
 V
 
 66
 Is plaintiff barred from relief in this action by claimed violations of the anti-trust laws?
 
 
 67
 On this appeal and for the first time, appellants claim that appellee should be thrown out of court on the ground of unclean hands because of alleged violations of the anti-trust laws.
 
 
 68
 Since this issue was not raised below, it cannot be raised here. Federal Rules Civ.Proc. 12(h). Appellee was given no notice of the now claimed defense of violating the anti-trust laws.
 
 
 69
 But even were we to assume that appellants are not barred from raising the issue here, is there an adequate defense on the record before us?
 
 
 70
 Appellants claim that appellee is guilty of intending to monopolize the wax market, or some part of it anyway, in violation of 2 of the Sherman Act, and by the use of trademarks, in violation of 15 U.S.C. 1115, which is 33(b)(7) of the Lanham Act.[6] Appellants contend that this intent can be inferred from appellee's:
 
 
 71
 (1) registering multiple marks for wax products (Stride, Pride, Holiday, J-Wax, Kleen-Floor, Beauti-Floor, Pledge);
 
 
 72
 (2) mass advertising (about $12,000,000 in five years or so for Pledge alone);
 
 
 73
 (3) mass sales (over $50,000,000 in about five years or so for Pledge alone); and
 
 
 74
 (4) the bringing of infringement suits based on colorable similarity rather than on exact identity.
 
 
 75
 Appellants recognize that there is no case authority for their position, but cite a text by Toulmin[7] which is but one man's idea of what the law may some day be. The recognition of the author of this handbook as an expert in anti-trust law is not as widespread as is that of some other authors. Such a statement, without case authority and being a mere expression of opinion, adds little weight to appellants' argument. All of these acts described above are up to this date lawful acts, and constitute the sort of aggressive competition and promotion that anti-trust law seeks to protect, particularly within the limits of lawful monopolies granted by Congress 'in its wisdom.'
 
 
 76
 Appellants had a thousand words and an infinity of designs from which to choose for their product. Appellants chose to copy-- an intentional act not disputed on this appeal. As we said in Stork Restaurant v. Sahati, 9 Cir. 1948, 166 F.2d 348, at 361:
 
 
 77
 'There is no need for the appellees to appropriate the appellant's 'fanciful' or 'arbitrary' trade name. * * *
 
 
 78
 'This thought that a newcomer has an 'infinity' of other names to choose from without infringing upon a senior appropriation runs through the decisions like a leitmotiv.
 
 
 79
 'In Florence Mfg. Co. v. J. C. Dowd & Co., supra, 2 Cir., 178 F. at page 75, we find a classical statement of the principle: 'It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."
 
 This brings us to appellants' last point:
 VI
 
 80
 Does this court have jurisdiction on this appeal to modify the discretionary monetary awards of the district court, and if so, did the district court abuse its discretion?
 
 
 81
 Appellants claim that the district court abused its discretion in awarding statutory damages, an accounting of profits, and attorney's fees. This is disputed by appellee. This court presently has jurisdiction only as to the interlocutory judgment, which holds appellant liable. It does not deal with damages. We therefore will not rule on the point raised at this time. Reeve Music Co. v. Crest Records, Inc., 2 Cir. 1960, 285 F.2d 546; Chappell & Co. v. Palermo Cafe Co., 1 Cir. 1957, 249 F.2d 77.
 
 
 82
 Finding no error, the interlocutory judgment is
 
 
 83
 Affirmed.
 
 
 
 [1]
 'You bring up the validity of the trademark Pledge. I don't think there is any question but what the plaintiffs here have a registration on Pledge as a notation to use on a wax product
 'The copyright, probably, is valid that they have, but it is not infringed by any act that the defendant has done.
 'In short, your Honor, the defendants' position is not that plaintiff's copyright is invalid or plaintiff's trademark is invalid, the defendants' position is that they have never infringed the trademark and they have never infringed the copyright, on the basis of the cases that I cited to you at the beginning of my oral argument, your Honor.'
 
 
 [2]
 As, for example, in Deward & Rich v. Bristol Savings & Loan Corp., 29 F.Supp. 777, 778, D.C.W.D.Va. 1939
 
 
 [3]
 As mentioned in Ansehl v. Puritan Pharmaceutical Co., 8 Cir. 1932, 61 F.2d 131
 
 
 [4]
 Almost $8,000
 
 
 [5]
 There the court said:
 'While the act of 1920 does not vest any new substantive rights, it does create remedies in the federal courts for protecting the registrations and authorizes triple damages for infringement. As a consequence of these remedial provisions, when a suit is begun for infringement, bottomed upon registration under the 1920 act, the district courts of the United States have jurisdiction. Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits. In this case the trial court concluded that the invalidity of the trade-mark divested it of jurisdiction over unfair competition. This was erroneous. Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trademark, persists to deal with all grounds supporting it, including unfair competition with the marked article.'
 
 
 [6]
 '(b) * * * the certificate shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce * * * except when one of the following defenses or defects is established: * * *
 '(7) That the mark has been or is being used to violate the antitrust laws of the United States.'
 
 
 [7]
 Toulmin, Trade-Mark Handbook (1957), p. 401