# United States Court of Appeals
## For the First Circuit

No. 03-1968

GENERAL HEALTHCARE LTD.,

Plaintiff, Appellant,

v.

ISAM QASHAT; KENT INTERNATIONAL PRODUCTS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Howard, Circuit Judge,
Coffin and Campbell, Senior Circuit Judges.

Adam K. Derman with whom Peter E. Nussbaum, R. Jonas Geissler, and Wolff & Samson PC were on brief for appellant.
Michael A. Albert with whom Laura Topper, and Wolf, Greenfield & Sacks, P.C. were on brief for appellees.

April 13, 2004

**COFFIN**, **Senior Circuit Judge**.  In this dispute, both parties claim ownership of the United States trademark rights in "Kent Creme Bleach" (the Kent mark).  Appellant General Healthcare International (GHL), a United Kingdom corporation, appeals the district court's grant of summary judgment in favor of Kent International Products (KIP), a United States corporation.  The district court concluded that GHL never used the Kent trademark in commerce in the United States and therefore did not own the contested rights in the mark.  Because GHL lacked ownership, the district court also held that GHL did not have standing to seek cancellation of KIP's allegedly infringing registration.  On appeal, GHL argues that the transportation of goods bearing the Kent trademark from a manufacturer in the United States to its offices in the United Kingdom is sufficient to confer ownership rights in the mark.  We disagree, and affirm the district court.

## I.  Factual Background

The heart of this dispute lies in Saudi Arabia, where both GHL and KIP sell Kent Creme Bleach, a personal care product that lightens body hair.  The product has several components, including the actual cream itself, the tubes (bearing the Kent mark) in which the cream is placed, an instructional insert, and an applicator.  Together, these elements are packaged in a box (also bearing the Kent mark) for sale to consumers.  The complete product of both companies is identical in packaging and - for purposes of this

appeal - substance.[1]   In this case, KIP and GHL contest only trademark rights in the United States, where both companies manufacture the product.[2]

The undisputed first user of the Kent mark was a third company, Healthcare International (HCI), which has since been dissolved.  From 1982 until approximately 1989, HCI sold Kent Creme Bleach in the Middle East.  Both Adel Kseib, principal of GHL, and Isam Qashat, principal of KIP,[3] were aware of the Kent product by virtue of their respective businesses involving the export of personal care products to the region.  Sometime after the death of HCI principal Salvatore Rodino in 1989, Kseib and Qashat learned (through various business contacts) that supplies of Kent Creme Bleach were dwindling.  Each then set about gearing up his own manufacture and export of the product.  Kseib allegedly purchased the Kent trademark from Rodino's widow and received HCI's list of suppliers; Qashat, unable to reach anyone at HCI, engaged counsel to conduct a trademark search to determine the status of the Kent trademark.  The search revealed that HCI's application for

_____

[1]There is an allegation in the deposition of Adel Kseib, principal of GHL, that KIP's product may have been of inferior quality, but that is not material to the issue before us.

[2]The record contains some indication of proceedings - the exact nature of which is unclear - in Saudi Arabia, but in the current posture of the case, such activity is of no consequence.

[3]We use the names of the individuals and their respective companies interchangeably.

registration of the Kent mark was rejected and ultimately abandoned in 1986. In light of what seemed to be the permanent cessation of HCI's activity, Qashat presumed the mark to be available for appropriation. He ascertained the Kent formula based on a sample of the then-existing product and established his own manufacturing and export network in the United States.

KIP subsequently obtained United States registrations for both the word mark and the trade dress. The word mark has since become incontestable.[4] GHL, on the other hand, never attempted to register its interest in the Kent mark, relying instead on protection afforded by common law.

The only material difference in the operation of the two companies is that KIP sells to the Middle East directly from its United States offices. GHL, on the other hand, manufactures the cream in the United States, but assembles the final product in the United Kingdom. All sales to the Middle East occur from GHL's United Kingdom offices.

Qashat and Kseib have been aware of each other's competing activity since 1990, as evidenced by a cease-and-desist letter sent from GHL to KIP in March 1991. GHL did not file suit, however,

---

[4]Under 15 U.S.C. § 1065, after five consecutive years of continuous use, a registrant may file an affidavit of incontestability. Such status limits the circumstances under which a registration may be cancelled to: fraudulent acquisition, failure to properly control use of a certification mark, and, situations in which a valid common law owner has established a date of use prior to that of the registered mark.

until February 1, 2000, when it brought claims under the Lanham Act for unfair competition and false advertising, and also sought to cancel KIP's United States registration.  See 15 U.S.C. §§ 1064, 1119, 1125(a).  KIP responded with a counterclaim against GHL for infringement.  Following discovery, each party moved for summary judgment.

## II.  **Basics of Trademark Law**

Under the Lanham Act, a trademark includes "any word, name, symbol, or device or any combination thereof" used by an individual or entity "to identify and distinguish his or her goods . . . from those manufactured or sold by others."  15 U.S.C. § 1127. Trademark rights may arise under either the Lanham Act or under common law, but in either circumstance, the right is conditioned upon use in commerce.[5]  United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918) (establishing that "the right to a particular mark grows out of its use, not its mere adoption").  A mark is deemed "in use in commerce" when it is affixed to the goods with which it is associated and those goods are then "sold or transported in commerce."  15 U.S.C. § 1127.  Of particular

---

[5]Since 1988, the United States has permitted applications for registration on the basis of an intent to use.  Such application must be supplemented by a verified statement of use, submitted no later than 24 months after issuance of a notice of allowance, else the registration will be deemed abandoned.  See 15 U.S.C. § 1051 (d) (setting forth initial six month period within which to submit a statement of use and detailing conditions for extension of time to file the statement).

relevance to this appeal is that sales of goods within or from the United States are not necessary to establish trademark ownership; for purposes of the Lanham Act, transportation alone qualifies. See New England Duplicating Co. v. Mendes, 190 F.2d 415, 417 (1st Cir. 1951) ("The use of the disjunctive 'or' between 'sold' and 'transported' leaves no doubt that a transportation . . . is enough to constitute a 'use' even without a sale.").

However, "not every transport of a good is sufficient to establish ownership rights in a mark." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1196 (11th Cir. 2001). In assessing rights stemming from transportation, courts and commentators have required an element of public awareness of the use. Mendes, 190 F.2d at 418 (requiring "first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind. . ."); see also Planetary Motion, Inc., 261 F.3d at 1195 (citing Mendes, 190 F.2d at 418); Brookfield Comm., Inc. v. West Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999) (citing Mendes, 190 F.2d at 418); Blue Bell, Inc. v. Farah Mfg. Co., 508 F.2d 1260, (5th Cir. 1975) ("Secret, undisclosed shipments are generally inadequate to support the denomination 'use.'"); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:118 (4th ed. 2003) ("It seems clear that 'transportation,' as an

-6-

alternative to 'sale,' requires the same elements of open and public use before customers.").

GHL contended below that the shipment of Kent Creme Bleach from the United States manufacturer to its United Kingdom office, followed by subsequent sales from the United Kingdom to the Middle East, was use in commerce sufficient to sustain United States ownership rights. The crux of the district court opinion was that GHL's activities lacked the public use element necessary to assert trademark rights based on transportation. Using the two step test for abandonment set forth in 15 U.S.C. § 1127, the district court then found that any trademark rights acquired by GHL from HCI had long since been abandoned on the basis of nonuse. The court thus granted KIP's request for summary judgment, which we now review de novo. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In evaluating this claim we, like the district court, assume but do not decide that GHL legitimately acquired trademark rights from HCI in 1989. To prevail on appeal, however, GHL must demonstrate that since that acquisition, it has continued to use the mark in commerce in the United States. A trademark owner who fails to use a mark for three consecutive years may be deemed to have abandoned the mark, which would then fall into the public domain. We therefore focus our inquiry on GHL's most recent three

years of use; if GHL has failed to maintain its common law rights,[6] there will be no basis for its claim of infringement.[7]

### III.  GHL's Ownership Rights

GHL contends that the district court inappropriately focused on the public nature (or lack thereof) of GHL's use in commerce. The company argues that, under our decision in Purolator, Inc. v. EFRA Distrib. Inc., 687 F.2d 554 (1st Cir. 1982), the fact that GHL's use included both transportation and subsequent sales to consumers eliminates the need for such an inquiry.  In Purolator, we held that interstate shipment of automobile filters in unmarked boxes, followed by solely intrastate sale, was sufficient use in interstate commerce so as to bring the dispute within the jurisdiction of the Lanham Act.  Id. at 559.  GHL cites cases from other circuits that similarly find jurisdiction based on a combination of non-public transportation and consumer sales. See, e.g., John Walker and Sons Ltd. v. DeMert & Dougherty, Inc., 821

---

[6]Although GHL alleges ownership under common law, we draw on the statutory definition of use in commerce to determine whether GHL's activities merit protection.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (noting that "the general principles qualifying a mark for registration under the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection. . . .").

[7]Federal registration is not required to bring a Lanham Act claim, see U.S.C. §§ 1064, 1125 (action may be brought by "any person" who believes he or she may be damaged), but the scope of any common law rights vindicated would be limited to areas where the mark is in use.  See United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97-98 (1918)(clarifying that a trademark is not a right in gross or at large, but is confined to territories of use).

F.2d 399, 408 (7th Cir. 1987) (interstate shipment of cans bearing allegedly infringing trademark, followed by subsequent sales overseas, brought dispute within jurisdiction of Lanham Act); Scotch Whiskey Ass'n v. Barton Distilling Co., 489 F.2d 809, 812-13 (7th Cir. 1973) (determining that shipments of infringing labels from the United States to Panama gave rise to extraterritorial jurisdiction under Lanham Act). What GHL fails to recognize, however, is the distinction between a jurisdictional inquiry and an ownership dispute. The "use in commerce" test for establishing jurisdiction looks at whether shipments traveled from state to state or from the United States to a foreign jurisdiction, and not at whether the shipments were exposed to the public. See Techsplosion, 261 F.3d at 1195 n.8 (citing Mendes, 190 F.2d at 417-418)("[The Mendes] ownership test is not for the purpose of establishing the 'use in commerce' jurisdictional predicate of the Lanham Act.").

In a second line of attack on the continuing validity of the public use requirement, GHL argues it became obsolete with adoption of the intent to use system in 1988. As noted earlier, see supra n.5, applicants may now obtain registration based on plans to use the trademark in the near future. GHL contends that if future use is sufficient, demonstrated public awareness could not be a prerequisite to ownership. This argument again mixes apples and oranges. An applicant may obtain registration of a mark based on

anticipated use, but registration connotes ownership only if the applicant ultimately demonstrates actual use. Courts have continued to incorporate the public use requirement as set forth in Mendes in their ownership analyses. See Techsplosion, 261 F.3d at 1195; CCBN.com v. C-call.com, 73 F. Supp. 2d 106, 110 (D. Mass. 1999). Moreover, the requirement retains vitality as a matter of logic. The public purpose underlying trademark protection is the preservation of good will associated with the mark, and public awareness is obviously a requisite of good will. See Brookfield Comm., Inc., 174 F.3d at 1051 (observing that a mark is not "meritorious of trademark protection until it is used in public in a manner that creates an association among consumers between the mark and the mark's owner").

To the extent that wholly foreign sales - thus outside the scope of commerce regulated by Congress - are a key element of GHL's claimed use, GHL runs into a further stumbling block. In Avakoff v. Southern Pacific Co., 765 F.2d 1097 (Fed. Cir. 1985), a case relied on by the district court, the Federal Circuit held that a trademark applicant could not bolster an application for registration based primarily on intra-corporate shipments (admittedly nonuse) by pointing to a concurrent advertising campaign.[8] This is because advertising is not a "use within the

---

[8]Although rendered in the context of whether the particular use in question was sufficient to support an application for registration, the reasoning is congruous. See Two Pesos, Inc., 505

meaning of the statute." Id. at 1098. Under the rubric of Avakoff, the fact that GHL follows intra-corporate shipments (serving no source identifying function) with overseas sales is likewise insufficient to garner trademark protection in the United States. The subsequent sales between the United Kingdom and the Middle East are not a "use in commerce" within the purview of the Lanham Act. See Buti v. Perosa, S.R.L, 139 F.3d 98, 103 (2d Cir. 1998) (promotional activities in the United States did not merit Lanham Act protection for a mark associated entirely with ongoing business overseas).

On this basis, we affirm the district court's conclusion that, at least as to the most recent three years of activity, GHL has not used the Kent mark in commerce and therefore KIP demonstrated prima facie evidence of abandonment.

## IV.  Intent to Resume Use

To rebut a prima facie showing of abandonment, a purported trademark owner must demonstrate that it intends to resume use "in the reasonably foreseeable future." Silverman v. CBS, Inc., 870 F.2d 40, 45 (2d Cir. 1989). Conclusory testimony will not suffice; we look for evidence of "activities . . . engaged in during the nonuse period" that manifest such intent. Imperial Tobacco Ltd. v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990). See also McCarthy at § 17:13 (the "vague and nebulous"

U.S. at 768.

-11-

statements of a party can be "outweighed by his actions, which may speak louder than words"). There is no such evidence here.

At his deposition, Kseib testified that he had never sold goods in the United States and had taken no steps to introduce his version of Kent Creme Bleach to the domestic market. Nothing in GHL's method of operation suggests any interest in developing the United States market. In fact, in the years since its alleged purchase of the Kent mark, GHL actually decreased the minimal contacts it had with the United States by shifting final assembly of the product to the United Kingdom. Although Kseib said that the prospect of litigation kept him from increasing his United States presence, GHL failed to assert its alleged ownership for nearly a decade after learning that KIP was also manufacturing Kent Creme Bleach. GHL's professed interest in the United States market would have been strengthened had GHL taken more timely action.

The district court thus properly concluded that GHL's noncommittal, indefinite assertion of intent to resume use was insufficient as a matter of law to rebut the presumption of abandonment.

## V. Cancellation

Having found that GHL had no United States rights in the Kent trademark, the district court found there was no standing to pursue cancellation of KIP's registration. We agree that GHL's claim for cancellation is unsuccessful, but on different grounds.

Although the incontestable status of KIP's registration limits the grounds for cancellation, see 15 U.S.C. § 1065, GHL bases its claim on circumstances available to it notwithstanding such status. In particular, GHL alleges that it has common law trademark rights with a priority use date trumping KIP's registration, that the registration was fraudulently obtained, and that KIP's registration misrepresents the source of the good.

We can easily dispose of GHL's priority use claim by reference to our determination that GHL has abandoned whatever common law rights it may have acquired. The statutory exception for challenging an incontestable registration based on priority common law rights requires "use . . . continuing from a date prior to the date of registration." 15 U.S.C. § 1065 (emphasis added).

GHL next alleges that KIP's registration was fraudulently obtained because at the time Qashat filed his application, he was aware of HCI's prior use of the Kent mark. An applicant for trademark registration must submit a verified statement that no party other than the applicant is entitled to use the mark. 15 U.S.C. § 1051(a). Qashat knew HCI had used the mark; the district court supportably found, however, that he reasonably believed that he was simply appropriating an abandoned mark. See Dial-a-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1355 (E.D.N.Y. 1994) ("Once abandoned, the mark reverts back to the public domain whereupon it may be appropriated by anyone who adopts

-13-

the mark for his or her own use."). To the extent that Qashat was aware of GHL's (rather than HCI's) operations in the Middle East, such is not ground for fraud, especially absent any visible indicia of GHL's use in commerce in the United States. See Person's Co. v. Christman, 900 F.2d 1565, 1569-70 (Fed. Cir. 1990) ("Knowledge of a foreign use does not preclude good faith adoption and use in the United States.").

Moreover, we are satisfied that Qashat's counsel conducted a thorough trademark search, investigating both applications and registrations at the United States Patent and Trademark Office (PTO). Counsel learned that HCI's application for registration had been rejected, and the file subsequently destroyed. Upon contacting HCI to determine whether the mark was still in use, counsel learned of Rodino's death and the cessation of HCI's operations. We have no illusions that Qashat sought to do anything but capitalize on the legacy of HCI's operations in the Middle East, but the record indicates this was permissible behavior based on the reasonable belief that the mark was available for appropriation.

GHL has offered no plausible reason why it waited over ten years after KIP's application for registration to bring an action for fraudulent acquisition. GHL's protestation that it was difficult to locate KIP is particularly suspect in light of the fact that an opposition or cancellation proceeding would have

-14-

required only a filing with the PTO; KIP's whereabouts were thus immaterial.  See 37 C.F.R. §§ 2.101, 2.111 (2003).

GHL's final ground for cancellation is that KIP misrepresented the source of the product.  In light of our determination that KIP validly adopted an abandoned mark, however, we do not see how KIP's mark, which has included the name "Kent International Products" or "Hair Care International" (an earlier unincorporated export venture of Qashat's), can be said to mislead consumers.

Affirmed.