**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRATERNAL ORDER OF POLICE LODGE
NO. 89; INTERNATIONAL FIRE
FIGHTERS ASSOCIATION, Prince
George's County Local 1619, Inc.;
DEPUTY SHERIFF'S ASSOCIATION,
Prince George's County; PRINCE
GEORGE'S COUNTY CORRECTIONAL
OFFICERS ASSOCIATION, INC.; POLICE
CIVILIAN EMPLOYEES ASSOCIATION;
ISMAEL V. CANALES; DOUGLAS
BARTHOLOMEW; ROBERT A. CEASE;
CURTIS KNOWLES; ARTHUR C.
EMERY; MARYLAND PUBLIC
EMPLOYEES COUNCIL 67, a/w
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO; AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO,
Local 241; AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO,
Local 1170; AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-CIO,
Local 2462;

No. 09-2187

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, Local 3389;
AMERICAN FEDERATION OF STATE,
AND MUNICIPAL EMPLOYEES, AFL-
CIO, Local 2735,

*Plaintiffs-Appellees,*

v.

PRINCE GEORGE'S COUNTY,
MARYLAND,

*Defendant-Appellant.*

INTERNATIONAL MUNICIPAL LAWYERS
ASSOCIATION,

*Amicus Supporting Appellant,*

AMERICAN FEDERATION OF
LABOR AND CONGRESS OF
INDUSTRIAL ORGANIZATIONS,

*Amicus Supporting Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:08-cv-02455-AW)

Argued: May 13, 2010

Decided: June 23, 2010

Before KING and DAVIS, Circuit Judges, and C. Arlen
BEAM, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Reversed by published opinion. Judge King wrote the opinion, in which Judge Davis and Senior Judge Beam joined.

## COUNSEL

**ARGUED**: William Walter Wilkins, NEXSEN PRUET, Greenville, South Carolina, for Appellant. Bruce R. Lerner, BREDHOFF & KAISER, PLLC, Washington, D.C., for Appellees. **ON BRIEF**: Kirsten Small, NEXSEN PRUET, Greenville, South Carolina, for Appellant. Joel A. Smith, Darragh L. Inman, KAHN, SMITH & COLLINS, P.A., Baltimore, Maryland, for AFSCME Appellees; Andrew D. Roth, Jason Peckenpaugh, Laurence Gold, BREDHOFF & KAISER, PLLC, Washington, D.C., for Public-Safety Appellees. Charles W. Thompson, Jr., Devala A. Janardan, INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION, Bethesda, Maryland, for Amicus Supporting Appellant. Lynn Rhinehart, James B. Coppess, AFL-CIO, Washington, D.C., for Amicus Supporting Appellees.

## OPINION

KING, Circuit Judge:

The appellees — several labor unions as well as individuals represented by those unions (collectively, the "Unions") — initiated this declaratory and injunctive proceeding against appellant Prince George's County, Maryland (the "County"). Their three-count complaint alleges, on behalf of County employees covered by collective bargaining agreements (the "CBAs"), that an employee furlough plan implemented by the County in September 2008 contravened County law and the Contract Clause of the Constitution. The district court rejected the two county-law claims, but agreed with the contention in the complaint's third count, namely, that the furlough plan

contravened the Contract Clause. *See Fraternal Order of Police v. Prince George's County, Md.*, 645 F. Supp. 2d 492 (D. Md. 2009) [hereinafter "*Opinion*"]. The County has appealed and, as explained below, we reverse.

I.

A.

Pursuant to its charter, the County must have a balanced fiscal year budget, meaning that its expenditures must not out-pace its revenues. The County's ability to quickly increase revenues is inherently limited, however, because the charter specifies both that property tax rates cannot be increased above the 1979 rate and that a tax increase or levy can only be submitted for voter approval in a congressional election year. By 2008, a severe downturn in the local housing market, mimicking the national downturn, had adversely impacted the County's finances. Thus, during the budget process for fiscal year 2009 ("FY 2009"), the County projected a serious reve-nue shortfall. In June 2008, for example, the County projected a deficit of $48 million for FY 2009.

In response to its anticipated revenue shortfall, the County considered and adopted several measures to cut its FY 2009 expenditures. Of importance here, the County sought to cur-tail the compensation costs of County employees, implicating the Unions' interests. In addition to specifying the hours and wages of the union-represented employees, the CBAs grant annual cost-of-living adjustments to them.[1] On June 26, 2008, County officials met with the Unions' representatives and requested that the unionized employees forfeit their cost-of-living adjustments for FY 2009. The Unions rejected the

[1]The relevant CBAs were apparently never submitted to the district court in this proceeding, and thus are not part of the record nor included in the Joint Appendix. Nevertheless, the parties do not dispute the relevant terms of the CBAs.

County's request, however, primarily because they believed that less drastic alternatives were available. More specifically, the County maintained at least two reserve funds containing tens of millions of dollars, and the Unions argued that the County could use these funds to balance the FY 2009 budget.

In September 2008, the County again revised its revenue forecast to reflect data from the first two months of FY 2009. Those revisions predicted that the annual deficit would actually be $57 million — $9 million more than had been forecast in June. After making other budget cuts, the County sought to identify more than $20 million in additional cuts so that it could balance the FY 2009 budget without dipping into its reserve funds. On September 15, 2008, the County's representatives once again met with the Unions, explaining that the County had decided to implement an employee furlough plan.

On September 16, 2008, the County Council adopted County Resolution 81-2008, which formally implemented the relevant employee furlough plan. The furlough plan required approximately 5,900 employees to forego 80 scheduled work hours in FY 2009 (two full work weeks), representing a 3.85% annual pay reduction for such employees and saving the County approximately $20 million in compensation costs. As authority for the furlough plan, the County relied on section 16-229 of the County's Personnel Law, which authorizes the County to furlough certain employees when the County Executive "determines that an ascertained shortfall in revenue based upon available projections, during any fiscal year[,] requires the compensation level of a department, agency, or office to be reduced." P.G. County Code § 16-229(a)(1).

B.

Two days later, on September 18, 2008, the Unions filed this lawsuit in the Circuit Court for Prince George's County, seeking declaratory and injunctive relief with respect to the furlough plan. The complaint alleged three claims against the

County: (1) that the furlough plan contravened section 16-233(e) of the County's Personnel Law, which authorizes a ratified CBA to override any contrary provision of the Personnel Law (Count One); (2) that the furlough plan did not abide by the furlough authorization provision found in section 16-229 of the Personnel Law (Count Two); and (3) that the furlough plan contravened the Contract Clause of the Constitution (Count Three). On September 19, 2008, the County removed the lawsuit to the District of Maryland.

Following limited discovery, the parties filed cross-motions for summary judgment. By its decision of August 18, 2009, the district court awarded summary judgment to the County on the county-law claims in Counts One and Two, but granted summary judgment to the Unions on the Contract Clause claim in Count Three.[2]

In its decision, the district court first rejected Count One, the Unions' claim under section 16-233(e) of the Personnel Law.[3] More particularly, the court agreed with the County that nothing in the relevant CBAs prohibited the County from furloughing covered employees. *See Opinion*, 645 F. Supp. 2d at 504; *see also Prince George's County v. Fraternal Order of Police, Prince George's County, Lodge 89*, 914 A.2d 199, 210 (Md. Ct. Spec. App. 2007) (observing that section 16-233(e) authorizes specific CBA provisions to override general Personnel Law provisions). In so ruling, the court relied on the parties' bargaining history, observing that between 1991

---

[2]Because the Unions did not cross-appeal from the district court's judgment on the Personnel Law claims in Counts One and Two, those claims are not specifically before us in this appeal. Nevertheless, the court's assessment of those claims is relevant to a proper evaluation of the claim in Count Three.

[3]Section 16-233(e) provides that "[u]pon adoption [of a CBA] by the County Council, any provision in the applicable agreement contrary to the provisions of this Subtitle shall have the effect of amending any such provision and enacting the provision into law applicable to that collective bargaining agreement." P.G. County Code § 16-233(e).

and 1995, the CBAs specifically prohibited furloughs. *See Opinion*, 645 F. Supp. 2d at 505. Thereafter, however, such a "provision no longer appeared in any of the CBAs, rendering the CBAs silent on the issue of furloughs." *Id.* Accordingly, the Unions could not "argue that they bargained for an exemption from furloughs." *Id.* In short, because the CBAs lacked any provision that could be read as specifically overriding section 16-229's general authorization of furloughs, the court awarded summary judgment to the County on Count One.

Second, the district court rejected Count Two, the Unions' claim that the County's furlough plan contravened section 16-229. *See Opinion*, 645 F. Supp. 2d at 505. The Unions alleged that the furlough plan was impermissible because it was not actually "required," particularly in light of the reserve funds available to the County. In this respect, the County maintained that section 16-229 vests the County Executive with the discretion to decide whether such a furlough plan is "required" by the circumstances. The court agreed with the position of the County, concluding that the Personnel Law unambiguously provided the County Executive with a broad grant of discretion to determine whether and when a furlough was "required." *See id.* at 507-08 ("[A]bsent a showing of bad faith or unreasonableness, the County executive has full authority under Section 16-229 to determine what is 'required.'"). Accordingly, the court awarded summary judgment to the County on Count Two.

Finally, however, the district court awarded summary judgment to the Unions on the Contract Clause claim of Count Three. *See Opinion*, 645 F. Supp. 2d at 508-18. Applying the three-part Contract Clause analysis established by the Supreme Court, the court ruled that (1) the furlough plan impaired the CBAs, (2) such impairment was "substantial," and (3) it was not "reasonable and necessary." *See id.* at 509-11. In assessing whether the CBAs had been impaired (under prong one), the court simply explained that

> [u]nder the [CBAs], covered employees were guaranteed certain salaries/wages and hours. By furloughing employees, the County reduced these salaries/wages and hours. The contracts were not subject to unilateral adjustment by the County. To find otherwise would render the contracts virtually meaningless, because the union employees would not be able to order their personal and business affairs and rely upon the rights and obligations they bargained for. Thus, the Court finds that the [furlough plan] impaired the Unions' CBAs.

*Id.* at 510 (citation and internal quotation marks omitted). The court then concluded that the balance of the test was also satisfied because such an impairment was substantial (under prong two) and, given the County's access to approximately $97 million in reserve funds, the impairment was neither reasonable nor necessary (under prong three). *See id.* at 510-17. Accordingly, the court awarded summary judgment to the Unions on the Contract Clause claim.

The County has timely appealed from the court's summary judgment award on Count Three, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's award of summary judgment, viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. *See In re Peanut Crop Ins. Litig.*, 524 F.3d 458, 470 (4th Cir. 2008). Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III.

Notwithstanding the seemingly absolute terms of the Contract Clause, the Supreme Court has long interpreted the Clause as not uniformly prohibiting the impairment of either government or private contracts. *See U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 21 (1977).[4] Instead, the Court has outlined a three-part test intended to balance the Contract Clause's protections against the states' reserved police powers. *See id.* More specifically, a reviewing court must determine: (1) whether there has been an impairment of the contract; (2) whether that impairment was substantial; and (3) if so, whether the impairment was nonetheless a legitimate exercise of the police power. *See Balt. Teachers Union v. Mayor & City Council of Balt.*, 6 F.3d 1012, 1015 (4th Cir. 1993). Under the third prong — stated alternatively as whether the impairment was "reasonable and necessary to serve an important public purpose" — a state's impairment of its own contracts is subject to greater scrutiny than its impairment of private contracts. *See U.S. Trust*, 431 U.S. at 25-26.

On appeal, the County maintains, first of all, that the furlough plan did not impair the County's contractual obligations, and, in the alternative, that any impairment of the CBAs was reasonable and necessary under the circumstances. The Unions, on the other hand, maintain that the County has abandoned any contention that the CBAs were not impaired. The Unions also maintain that the CBAs were in fact impaired, and, alternatively, that if the County actually reserved the right to implement furloughs, such a reservation would itself contravene the Contract Clause.

As explained below, we agree with the County that it has preserved its contention that the CBAs were not impaired. We

---

[4]The Contract Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1.

further agree with the County that the furlough plan did not impair the CBAs because, as a matter of County law, the Personnel Law's authorization for furloughs — specifically, section 16-229 — is part of the CBAs. Finally, we reject the Unions' assertion that the reservation of rights contained in section 16-229 contravenes the Contract Clause.

## A.

As a threshold matter, the Unions contend that the County has abandoned any contention that the CBAs were not impaired for purposes of the Contract Clause. The Unions concede that the County advanced that contention in its summary judgment papers in the district court, but assert that the County's lawyer abandoned it in an exchange with the district court during argument on the summary judgment motions. The exchange relied upon is as follows:

| | |
|---|---|
| COUNSEL: | I would submit to the court that the furlough plan must be analyzed under the contract clause analysis as to whether, if it is an impairment, whether under the facts it was reasonable and necessary for a public purpose. |
| THE COURT: | Well, let's get that out the way right now. There was an impairment. Now, all the cases say that. Now, let's understand that. |
| COUNSEL: | Yes. |
| THE COURT: | So, we're not going to debate that. There's a significant impairment here — |
| COUNSEL: | Correct. |

THE COURT:      — of this contract. So, that's not a dispute with me. So, the issue, again, is what's required, what's necessary and so forth. That's what we're talking about.

COUNSEL:        Correct.

THE COURT:      All right.

COUNSEL:        Your Honor, to explain the county's advancement of the argument it was an impairment, only because we overlapped the argument with the code that we were authorized to do it.

J.A. 100-01.[5] Shortly thereafter, however, the County's lawyer returned to the County's basic position — that the CBAs were not impaired because they did not preclude furloughs. Specifically, the County's lawyer stated that

> I understand the court's rationale, how it applies. The difference is 16-233(e), when they talk about a contract provision that supersedes, it is correct. . . . The reality is 16-233(e) is limited to the provisions that are included in the CBA. Furlough provisions were not. And as the court rightly acknowledged earlier, in the 1990's the furlough protections were in the CBAs. It stopped and then from 1995 to the present, it is not.

*Id.* at 104-05.

---

[5]Citations herein to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

Put simply, we must reject the Unions' assertion that this exchange manifested the County's abandonment of its contention that the CBAs were not impaired. Instead, the County's lawyer appears to have recognized the district court's differing viewpoint and its suggestion that the argument focus on another issue.[6] Under the Unions' position, the County's attorney could have preserved its impairment contention only by continuing to argue with the court after it had already forcefully rejected the County's position. Although a lawyer's statements may constitute a binding admission of a party, any such statement must be "deliberate, clear, and unambiguous" before we will afford it preclusive effect. *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 n.2 (4th Cir. 2004) (alteration and internal quotation marks omitted). In this instance, the County attorney's representations at oral argument do not, when assessed in context, demonstrate the deliberate, clear, and unambiguous abandonment of the contention that the CBAs were not impaired by the furlough plan.[7] Accordingly, we are satisfied that the County adequately preserved that contention below.

---

[6]The Unions seek to bolster their abandonment contention by emphasizing that the County did not raise the issue of contract impairment in its supplemental brief after the argument (and after limited discovery). The County's submission, however, was merely a supplement to its original brief, which squarely raised the impairment contention. Supplemental briefing was only authorized so that the parties could update their contentions following discovery and the legal contention of whether there was a contract impairment was not affected by the discovery proceedings.

[7]Notably, even if the County's lawyer had admitted that the CBAs were somehow impaired by the furlough plan, it is far from clear that such an admission would have bound the district court in assessing the Contract Clause claim. *See New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them.").

## B.

Turning to the merits of the Contract Clause claim of Count Three, the district court erred in ruling, under the first prong of the constitutional test, that the CBAs were impaired. Pursuant to the terms of the County's Personnel Law, each provision thereof — including the authorization for furloughs contained in section 16-229 — must be read into the CBAs. The Unions maintain that section 16-229 "does not clearly manifest an intent on the County's part to reserve to itself such a unilateral contract modification power." Br. of Appellees 21. Such a construction of section 16-229, however, is foreclosed by the Personnel Law's plain terms, which the district court recognized when it awarded summary judgment to the County on the two Personnel Law claims of Counts One and Two.

## 1.

The County's Personnel Law is found in Subtitle 16 of the County Code. Section 16-103 provides that

> the provisions of this Subtitle shall apply to any employee occupying a position in the classified service where said employee is *governed by a collective bargaining agreement* . . . , except as specifically provided otherwise under the provisions of Section 16-233.

P.G. County Code § 16-103(a)(3) (emphasis added). Section 16-233, in turn, refers specifically to this principle, stating that "the provisions of this Subtitle shall apply to any employee who is governed by a collective bargaining agreement . . . , except as *specifically provided otherwise* in such collective bargaining agreements." *Id.* § 16-233(a) (emphasis added); *see also id.* § 16-233(b) ("[T]he provisions of this Subtitle shall be presumed to be Countywide in nature . . . .").

Indeed, section 16-233(e) creates the only exception to the principle that the Personnel Law is read into every CBA:

> Upon adoption of [a CBA] by the County Council, any provision in the applicable agreement contrary to the provisions of this Subtitle shall have the effect of amending any such provision and enacting the provision into law applicable to that collective bargaining unit.

*Id.* § 16-233(e).

The furlough provision in section 16-229, which is part of Subtitle 16, provides that "[e]mployees occupying full or part-time positions in either the classified or exempt service . . . may be required to take leave without pay as a furlough." P.G. County Code § 16-229(a). That provision further specifies that furloughs may be implemented, inter alia, "[w]here the County Executive determines that an ascertained shortfall in revenue, based upon available projections, during any fiscal year[,] requires the compensation level of a department, agency, or office to be reduced." *Id.* § 16-229(a)(1). When the County Executive makes such a determination, he must transmit to the County Council a furlough plan in resolution form. *See id.* § 16-229(b).

It is a cardinal principle of contract interpretation that the parties are presumed to contract against the backdrop of relevant law; thus, "all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *Lema v. Bank of Am., N.A.*, 826 A.2d 504, 516 (Md. 2003) (internal quotation marks omitted). Here, that paramount principle has been accorded added force by section 16-103(a)(3), which mandates that every provision of the Personnel Law — including the furlough provision — apply to the County employees governed by the CBAs. Thus, in light of the foregoing provisions of the County's Personnel Law, the CBAs

necessarily included as a term thereof the possibility of employee furloughs.

In seeking to avoid this conclusion as to Count Three, the Unions offer an interpretation of the CBAs that is expressly foreclosed by the district court's unappealed rulings on Counts One and Two. *See Opinion*, 645 F. Supp. 2d at 503-08. In short, the Unions assert that section 16-229 says "nothing about the unilateral abrogation or modification of *contracts that prohibit furloughs*." Br. of Appellees 28 (emphasis added). The Unions are unable, however, to identify any provision of the applicable CBAs that actually prohibits furloughs. If they had made such an identification, the Unions would have been entitled to summary judgment on Count One, as section 16-233(e) of the Personnel Law authorizes such a CBA provision to override the general authority for furloughs contained in section 16-229. Nevertheless, the court awarded summary judgment to the County on Count One, precisely because the applicable CBAs do not prohibit furloughs. Indeed, although previous CBAs expressly barred furloughs, they no longer do so. *See Opinion*, 645 F. Supp. 2d at 505. Thus, even though the CBAs guarantee certain wages and hours, those guarantees are subject to a significant caveat: the County may yet implement furloughs pursuant to section 16-229.

The Unions seek to countermand this plain reading of the Personnel Law by relying on our *Baltimore Teachers Union* decision. *See* 6 F.3d at 1015-16. That decision is inapposite here, though, because the Personnel Law applies section 16-229's authorization for furloughs to those employees covered by CBAs. In *Baltimore Teachers Union*, the City had adopted a furlough plan and then sought to defend a Contract Clause claim by asserting, much like the County here, that it had reserved the right to unilaterally modify the contracts. *See id.* The City's position was undercut, however, by the general nature of the provision on which it relied for authority to modify the contracts — Article VI, section 2(g) of the City

Charter. That provision provided that, where deficiencies arose from the City's failure to realize sufficient income, the Board of Estimates "shall effect reductions . . . in appropriations." *Id.* at 1016 n.3. Unsurprisingly, we recognized the charter provision — which failed to reference contracts or personnel practices — as far too general to "necessarily subsume the power to modify contracts." *Id.* at 1016. Thus, we concluded that the charter provision did "not clearly evidence an intention to authorize such modifications." *Id.* at 1016.[8]

In this situation, however, the County does not rely on such a general grant of authority regarding its ability to implement furloughs. Rather, it points to a specific provision of the Personnel Law, entitled "Furloughs," and an equally specific provision of that Subtitle providing that each of the provisions therein applies to employees covered by CBAs. The *Baltimore Teachers Union* decision is thus readily distinguishable from the circumstances presented in this appeal. Accordingly, we reject the proposition that the furlough plan impaired the CBAs.

2.

In the alternative, the Unions contend that, even if section 16-229's furlough provision authorizes the County to modify the CBAs, such a reservation of rights to the County would itself contravene the Contract Clause. In support of this contention, the Unions again rely on *Baltimore Teachers Union*, this time resting on dicta found in a footnote of the majority opinion. *See* 6 F.3d at 1016 n.5. In a concurring opinion, Judge Widener had maintained that another provision of the

---

[8]Further distinguishing *Baltimore Teachers Union* from this case, it was questionable there whether the City's furlough plan was even consistent with the budget reduction procedures required by section 2(g) of the City Charter. *See* 6 F.3d at 1016 n.4. By contrast, there is no suggestion of irregularity with respect to the process by which this furlough was implemented.

City law, the Neall Amendment, permitted the City to unilaterally modify the CBAs in question. *See id.* at 1024 (Widener, J., concurring). The Neall Amendment was stated as broadly as the City Charter, authorizing the City to "take any action necessary, including any action to reduce a previously approved appropriation." *Id.* The panel majority reasoned that, even if the Neall Amendment could be read to authorize furloughs (a proposition rejected by the majority), (1) there would have been such a failure of mutual obligation that it would be "doubtful" whether any contract existed and (2) "the Amendment, so read, *would almost certainly violate the Contract Clause itself.*" *Id.* at 1016 n.5 (emphasis added).

The latter point — mere unsupported dicta — cannot be read to invalidate the much narrower authorization for furloughs found in section 16-229 of the Personnel Law. As an initial matter, the hypothetical countered by the *Baltimore Teacher Unions* majority — the concurrence's broad reading of the Neall Amendment — is distinguishable from the more circumscribed authorization for furloughs contained in section 16-229. And, assuming that such dicta is applicable here, the constitutional analysis therein is not supported by any legal authority. In fact, the Unions are unable to identify any authority that has invalidated, under the Contract Clause, a statutory provision reserving to a governmental entity a limited right to modify its own contracts. Indeed, such a rule would contradict Supreme Court precedent concerning the incorporation of preexisting law into contracts. *See, e.g.*, *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429-30 (1934) ("[T]he laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." (internal quotation marks omitted)). Indeed, the Court has emphasized that this "principle embraces alike those [laws] which affect [a contract's] validity, construction, discharge, and enforcement." *Id.* at 430 (internal quotation marks omitted); *see also Long Island Water Supply Co. v. Brooklyn*, 166 U.S. 685, 692 (1897).

Moreover, the Unions' contention that such a reservation of rights would itself contravene the Contract Clause is belied by yet another provision of the County's Personnel Law: section 16-233(e). In short, the Unions maintain that any reservation of authority to the County, such as that contained in the authorization for furloughs in section 16-229, would unconstitutionally impair the Unions' ability to enter into meaningful and binding contracts. That notion is undercut, however, by section 16-233(e), which provides that a specific CBA provision can override any generally applicable provision of the Personnel Law. In other words, if the Unions were to enter into CBAs with the County that specifically prohibit furloughs — as they once did — then section 16-233(e) would preclude the County from furloughing the employees covered by those CBAs, notwithstanding section 16-229. Simply put, the Unions were free to protect any economic or financial expectancy with regard to wages and hours by securing the County's concurrence in a CBA that prohibited such furloughs, just as they had previously done. In essence, therefore, the Unions are simply asking for the benefit of a contract provision that was left on the bargaining table.

Nevertheless, even under the current CBAs, the Unions were not without a legal remedy. Due to the limitations imposed on the County Executive and the County Council by section 16-229, the Unions were entitled to pursue a claim under the Personnel Law that the furlough plan contravened section 16-229. Indeed, the Unions advanced such a contention in Count Two of their complaint. In rejecting that claim, however, the district court simply ruled that the County's furlough plan was consistent with the Personnel Law. That ruling should also have informed the court's assessment of whether the CBAs were impaired for purposes of the Contract Clause. In short, because the CBAs provided for the possibility of furloughs, the court erred in its application of the first prong of the Contract Clause test. Accordingly, we must reverse the summary judgment award to the Unions.

## IV.

Pursuant to the foregoing, we reverse the judgment of the district court on Count Three.

*REVERSED*